# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANITA LUM WING,

      *Plaintiff*,

vs.

MICHAEL ASTRUE, Commissioner of
Social Security,

      *Defendant.*

Case No. 10-1043-EFM

## MEMORANDUM AND ORDER

Plaintiff Anita Lum Wing seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. Having reviewed the record, and as described below, the Court orders that the decision of the Commissioner is reversed and remanded.

### I. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the administrative law judge ("ALJ") applied the correct legal standard.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

more than a scintilla, but less than a preponderance."[2] The court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] However, the Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6]

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.[7] The claimant bears the burden during the first four steps.[8] In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and she has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits."[10] If, however, a claimant does not establish an impairment at step three,

---

[2] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[3] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

[4] *Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[6] 42 U.S.C. § 416(I); *see also* 42 U.S.C. § 423(d)(1)(A)-2(A).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 404.1520(a);.

[8] *Lax*, 489 F.3d at 1084.

[9] *Id.* (citations omitted).

[10] *Id.*

the process continues. The Commissioner assesses a claimant's residual functioning capacity (RFC), and at step four, the claimant must demonstrate that her impairment prevents her from performing her past work.[11] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[12] The RFC assessment is used to evaluate the claim at both step four and step five.[13]

## II. Factual and Procedural Background

Plaintiff Anita Lum Wing applied for Social Security Income benefits on November 30, 2005. Plaintiff alleged a disability due to Epstein Barr virus and chronic fatigue. On April 26, 2006, her application was denied. Plaintiff then requested a hearing which occurred on June 4, 2008. The administrative law judge (ALJ) issued his decision on August 12, 2008.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 21, 2005. At step two, the ALJ determined that the Plaintiff had two severe impairments: Epstein Barr Virus and depression. At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment.

After establishing Plaintiff's RFC, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ determined that Plaintiff could perform work as a surveillance systems monitor which existed in significant numbers in the national economy. As such, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff requested review of the ALJ's decision by the Appeals Council which denied her

---

[11]*Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[12]*Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[13]*See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

request on December 11, 2009. The decision of the ALJ, therefore, stands as the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff seeks relief from this Court.

### III. Analysis

Plaintiff claims the ALJ erred because (1) he did not link the medical evidence with the RFC he assessed; (2) he did not properly consider the medical opinions; (3) he did not meet his duty to develop the record regarding Plaintiff's depression; (4) he did not meet his step five burden; and (5) he improperly disregarded Plaintiff's testimony.

*Issues 1 and 2 (RFC Assessment and Weighing of Medical Opinions)*

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence."[14] In addition, SSR 96-8p provides that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." The RFC assessment "must always consider and address medical source opinions" and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[15] "When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence."[16] The ALJ's decision must be sufficiently articulated for the court to engage

---

[14]SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see also Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005).

[15]SSR 96-8p, 1996 WL 374184, at *7.

[16]*Baker v. Astrue*, 2011 WL 1527324, at *2 (D. Kan. Apr. 20, 2011) (citing *Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003)).

-4-

in a meaningful review.[17] When the ALJ fails to comply with SSR 96-8p because he does not link his RFC determination with specific evidence in the record, the court cannot adequately assess whether the evidence supports the RFC determination.[18]   In this case, the ALJ summarized the evidence and then made his findings of fact and conclusions of law. However, he failed to link or relate the evidence to his RFC findings. After summarizing the evidence from three or four different sources, the ALJ gave a function-by-function analysis finding that Plaintiff "can occasionally lift and carry 20 pounds, frequently 10 pounds, she can stand and walk for approximately two hours in an eight-hour work day and can sit for six hours in an eight-hour work day."[19]

The Court finds that substantial evidence does not support the ALJ's finding because it is unclear as to what evidence the ALJ relied upon to make his physical findings because he merely summarized the evidence from each physician. There are inconsistencies between each physician's findings, and the ALJ did not discuss those inconsistencies. For example, Dr. Kenagi, at the request of the Missouri Disability Determination Services (DDS), found no physical limitations and that Plaintiff was most likely not precluded from performing any job-related duties. In contrast, the DDS's medical consultants who reviewed Plaintiff's medical records concluded that Plaintiff could perform light exertion. Finally, Dr. Moore, Plaintiff's treating physician, found Plaintiff totally disabled.[20]  Therefore, there are evaluations from three different sources that Plaintiff has no

---

[17] *Id.* (citing *Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003)).

[18] *See Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187-88 (D. Kan. 2003).

[19] Doc. 12-2, p. 11.

[20] Dr. Moore's physical findings included such limitations as never being able to lift or carry weight 11 to 20 pounds, and only being able to sit one hour in an eight hour workday. These conclusions would be closer to sedentary or no work. The ALJ did not include Dr. Moore's physical conclusions in his summary of the evidence other than to state that Dr. Moore found Plaintiff totally disabled.

physical limitations, can only perform light work, or can perform no work to sedentary work.

As noted above, the ALJ noted that Plaintiff could occasionally lift and carry 20 pounds, frequently 10 pounds, she could stand and walk for approximately two hours in an eight-hour work day and could sit for six hours in an eight-hour work day. 20 C.F.R. § 416.967(b) provides that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[21] It would appear, therefore, that the ALJ adopted the DDS's medical consultants' determination that Plaintiff could perform light exertion.

However, later, in the ALJ's findings of fact and conclusion of law, he gave the RFC assessment of sedentary. 20 C.F.R. § 416.967(a) provides that "[s]edentary work involves lifting no more than 10 pounds at a time . . . . Jobs are sedentary if walking and standing are required occasionally . . . ." As such, the Court is unsure of the basis of the ALJ's finding of sedentary.

> When an ALJ merely summarizes the facts, notes that he has considered all of the facts, and then announces his decision, there is nothing for the court to review. The court cannot know how the ALJ analyzed the evidence. When the evidence is contradictory or ambiguous, as it is in most cases, the court cannot know which evidence was given what weight, or how the ambiguities were resolved. Therefore, to determine whether substantial evidence supports the conclusion, the court would have to reweigh the evidence. Since that option is precluded by law, the court can only remand to the defendant for a proper explanation of how the evidence was weighed and ambiguities resolved.[22]

The ALJ's decision should be evaluated based solely on the reasons stated in the decision.[23] A reviewing court cannot make post-hoc rationalizations explaining the ALJ's treatment of the

---

[21]It also provides "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

[22]*Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1298 (D. Kan. 2007) (citing *Kency v. Barnhart*, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004) (Doc. 21 at 9)).

[23]*Robinson v. Barnhart*, 366 F.3d 1079, 1084 (10th Cir. 2004).

evidence when it is not apparent in the decision.[24] Accordingly, the Court will not attempt to determine what evidence supported the ALJ's RFC assessment, and remand is necessary.

The review of the ALJ's decision is further complicated because it is unclear what weight the ALJ gave Plaintiff's treating physician with respect to her physical findings. A treating physician's opinion is entitled to controlling weight if the opinion is well supported by acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.[25] "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."[26]

"Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."[27] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[28]

---

[24]*Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

[25]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 96-2p, 1996 WL 374188, at *2 and 20 C.F.R. § 404.1527(d)(2)).

[26]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(f)(2)(ii)).

[27]*Robinson v. Barnhart*, 366 F.3d at 1082 (citations and internal quotations omitted).

[28]*Id.* (citation omitted).

"After considering the pertinent factors, the ALJ must 'give good reasons in [the] notice of determination or decision' for the weight he ultimately assigns the opinion."[29] Although the ALJ does not have to explicitly discuss all the factors, the record must reflect that the ALJ considered the factors.[30] The decision must be sufficiently specific for subsequent reviewers to know what weight the adjudicator gave the treating physician's opinion.[31] If the ALJ completely rejects the opinion, he must articulate specific, legitimate reasons for doing so.[32]

As noted above, the ALJ did not discuss what weight he gave to Dr. Moore's opinion regarding Plaintiff's physical limitations. In addition, it appears that more weight was given to the non-treating physicians' opinions. However, the Court is unsure what weight was given because it was not discussed and because of the inconsistencies in the determination.

With respect to Plaintiff's mental limitations, it is clear that the ALJ did not give any weight to Plaintiff's treating physician's opinion. The ALJ stated "[a]lthough I credit Dr. Christine Moore's medical reports in great part, it is noted that she limits the claimant beyond her role and actual examination/treatment of claimant, suggesting an adoption of her subjectives. Therefore, I give no credit to her unrealistic, unsupported and untreated conclusions of 'poor' mental ratings.[33] Other than this brief explanation, the ALJ did not discuss any of the factors in 20 C.F.R. §§ 404.1527 and 416.927. Although an ALJ may reject a treating physician's opinion if the records reflect only the

---

[29]*Watkins*, 350 F.3d at 1301 (citing 20 C.F.R. § 404.1527(d)(2)).

[30]*Lopez v. Astrue*, 371 F. App'x 887, 889 n. 2 (10th Cir. 2010) (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007) and 20 C.F.R. § 416.927(d)(2)).

[31]*Watkins*, 350 F.3d at 1301.

[32]*Id.*

[33]Doc. 12-2, p. 12. The ALJ then stated that the DDS' medical consultants concluded that Plaintiff did not have a severe mental impairment.

-8-

plaintiff's subjective beliefs,[34] the ALJ must still provide good reasons for his decision.

The Court is cognizant that it must not reweigh the evidence, but it does not appear that the ALJ specifically articulated reasons for giving no weight to Dr. Moore's opinion. For example, there is evidence in the record that Dr. Moore saw Plaintiff for several years which could fairly detract from the finding that Dr. Moore adopted Plaintiff's subjective beliefs.[35] Other physicians opined that Plaintiff was depressed or "profoundly depressed" which could contribute to a poor mental rating. The DDS's medical consultants opined that she did not have a severe mental impairment,[36] but it appears that they only reviewed the records and never examined Plaintiff, as her treating physician did. In addition, two other physicians, included a physician at the DDS, opined that Plaintiff was depressed or "profoundly depressed." Although the ALJ's RFC assessment may remain the same, he must articulate specific reasons of how (and why) the evidence was weighed to support his determination. As such, the Court will remand the case.

### *Issue Three (Failure to Develop the Record)*

Plaintiff contends that the ALJ violated his duty to develop the record regarding Plaintiff's depression. The Court disagrees. The evidence does not demonstrate that there would be any medical records relating to counseling sessions. Plaintiff merely testified that she received some counseling from "church people," and it appears that it was informal in nature. As such, the ALJ

---

[34]*See Hayes v. Callahan*, 976 F. Supp. 1391, 1395 (D. Kan. 1997).

[35]The Commissioner contends that the evidence suggests that Plaintiff only saw Dr. Moore for purposes of her disability claim. Pursuant to 20 C.F.R. § 416.902, a medical source is not a treating source if the claimant's relationship is based solely on the need to obtain a report in support of a claim for disability. However, as noted above, there is evidence that Plaintiff saw Dr. Moore several times before ever filing a disability claim. In addition, it would be speculative for this Court to assume that this was one of the reasons that the ALJ discredited Dr. Moore's testimony as it was not an articulated reason.

[36]It appears that the ALJ may have afforded the most weight to the DDS's medical consultants' opinion.

did not err in not attempting to obtain counseling records.

### *Issue Four (Step 5 Burden)*

The Court will not address Plaintiff's contention that the ALJ erred in his Step 5 analysis because if the RFC assessment changes on remand, the step 5 analysis also may change.

### *Issue Five (Plaintiff's Credibility)*

Plaintiff also contends that the ALJ improperly disregarded her testimony. The ALJ found that he could not rely on Plaintiff's testimony for several reasons, including that she was not compliant with her treatment; she refused referral to a psychiatrist, and her daily activities were inconsistent with her allegations.

To analyze evidence of disabling pain, the ALJ must consider "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."[37] "Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determination when supported by substantial evidence."[38] The Court will not disturb the ALJ's determination of Plaintiff's credibility other than to note that because the case is being remanded, Plaintiff could raise the issue that the evidence suggests that she can no longer perform her hobbies, in contrast to the ALJ's determination that her daily activities are inconsistent with her allegations of pain.

---

[37]*Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (citations omitted).

[38]*Tracy*, 518 F. Supp. 2d at 1303.

**IT IS ACCORDINGLY ORDERED** that the judgment of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE